## FREDERICK DREW & *als.*, *in Equity, versus* ALBERT G. WAKEFIELD & *al.*, *Executors.**

Where a bequest is made subject to a condition precedent, and no time is fixed for the performance of the condition, and its performance is wholly dependent on the will of the grantee, the law gives a reasonable time to perform it.

What is an unreasonable time.

Effect of R. S., c. 74, § 17, limiting the time of performing a condition precedent in case of bequests, upon a will probated before such statute went into operation.

Where a trust is ineffectually declared, or fails, or becomes incapable of taking effect, the party taking it shall be deemed a trustee for other trusts in the will, or for those who are to take under the dispositions of law.

When a bequest of personal property becomes ineffectual for any cause, residuary legatees take it by virtue of the residuary clause.

The common law distinction between a lapsed devise and a lapsed legacy, has been abolished by R. S. of 1841, c. 92, § 13, (R. S., c. 74, § 5,) by which a devise will pass subsequently acquired real estate.

Contingent interests, not previously devised, will go by a general residuary clause to the residuary devisee, unless the will contains special indications of a contrary intention on the part of the testator.

Stat. 43 Eliz., c. 4, relating to charitable gifts and uses, is a part of the common law of this State.

Notwithstanding a trust for charitable uses may be somewhat vague and indefinite, a court of equity may enforce its execution.

When a bequest is to relations, the next of kin are entitled to the bequest, unless, from its nature, or the testator having authorized a power of selection, a different construction is allowed.

When a fund is bequeathed to executors or trustees upon trust, to distribute among the testator's relations, or apply to any other specific purpose, in such manner as they may think fit, the executors or trustees, if willing to execute the trust, will not, on a bill being filed for carrying the trusts into execution, be deprived of their discretionary power, but they may propose a scheme before the master for the approbation of the Court.

It may well be presumed to be in accordance with the intentions of a testator that, in the distribution of his estate, his " deserving relations" should be preferred to "indigent persons" not of kin.

Where the testator had given a deed of land, with restrictions, to a certain son, and, by will, had removed the restrictions, adding " said farm is given

---

* This case came into the hands of the present Reporter since the issuing of vol 53.

to him in full for his share of my estate;" and certain devises had lapsed and gone, by a general residuary clause, to certain trustees named, to be distributed among the testator's "deserving relations, in such manner as the trustees may think proper,"—such son may become the object of his father's bounty within the discretion vested in such trustees.

Reasonable costs and charges may be allowed to both parties to a bill in equity, brought to obtain a construction of a will.

BILL IN EQUITY.

APPLETON, C. J.—The complainants, heirs at law of the late Thomas Drew, have brought their bill in equity against the defendants, as executors and trustees under his will, to enforce certain trusts, as they allege, contained therein and in their favor.

The rights of these parties litigant arise under the will of said Drew, and depend upon the construction to be given thereto, taken in connection with the facts asserted in the bill and admitted by the answer or proved by testimony, to the admissibility of which no exceptions are taken.

The testator, after giving legacies to his children, by the seventh item of his will, devised real and personal estate to the defendants, as trustees, in the following words :—

"Seventh,—And whereas I have long contemplated the establishment of an asylum and farm school for the reform and education of indigent boys, as contemplated in an Act of the Legislature of the State of Maine, entitled an Act to incorporate "The Bangor Asylum and Farm School for Indigent Boys" passed April 2, 1852, as a great public charity, and have desired to impart of my ability to the endowment of such an institution, I therefore give, bequeath and devise to my said executors, but *in trust* for the endowment of such an institution, *when* properly and legally organized and sufficiently endowed, with this my bequest, to put such school in operation, all the lands and real estate which I own, or in which I am interested in the town of Sangerville, which land and real estate I value at the sum of five thousand dollars, and said executors are to hold said lands and real estate in trust for said purpose until in their opinion said institution is properly organized and sufficiently en-

dowed, aforesaid, when they are authorized to convey said lands to the proper officers of said institution, in trust, for the use of said institution.

" I also give, bequeath and devise to my said executors the sum of sixteen thousand dollars in trust for said institution, said sum being in notes in part, and the residue to be made up in the sale of lands by said executors, which sale they are authorized to make *when* they may deem it proper, which sum shall be invested by said executors in such manner as shall make the bequest most advantageous for such school, and to be paid over and conveyed to the proper officers of such school *when* a sufficient sum shall have been subscribed and given to justify, in their judgment, the commencement of such school, but not until the available means of such school, including my bequest, shall amount to the sum of forty thousand dollars."

This bequest is upon condition. Conditions may be precedent or subsequent. Conditions precedent are such as must be punctually performed, before the estate can vest. The bequest is on condition precedent. Before the Bangor Asylum and Farm School for Indigent Boys can have any right to this bequest or any claim to a conveyance, performance of the conditions, upon which alone such rights depend, must be fully shown.

But for what length of time can the performance of a condition precedent be deferred? How long are the trustees to retain the property bequeathed to the Bangor Asylum and Farm School hopelessly awaiting the performance of the conditions, upon the happening of which they would be authorized to convey to the "proper officers of said institution." The performance of the condition depended upon the action of the corporation to whom the devise was made. Conditions precedent must always be performed before the right dependent thereon can be enjoyed, and if no time be fixed and performance be wholly at the will of the grantee, the law gives a reasonable time in which to perform it. *Ward* v. *Patterson,* 46 Penn., (10 Wright,)

372.   In the case cited, eight or nine years elapsed before the performance of the condition precedent, and the delay was held unreasonable.

More than eleven years have elapsed since the death of Mr. Drew and the probate of his will.   The corporators of "The Bangor Asylum and Farm School for Indigent Boys" have accepted their charter, but have never met for the purpose of organizing under it.   They have no organization. They have no officers, nor do they intend to have any. No funds have been raised for the purpose of establishing the Asylum and Farm School.   There has never been an attempt to raise any.   It is not the intention of the corporators to take any action on the subject.   There is not the most remote probability that the sum of twenty thousand dollars, or any portion of it, will ever be raised.   No delay is asked for the purpose of making an attempt to raise it. Under such circumstances, it would seem that a reasonable time for the performance of the condition preliminary to a conveyance to the Bangor Asylum and Farm School had passed long ago.

Whatever may be the common law, as to what shall constitute a reasonable time for the performance of a condition like the present, it is not necessary to consider.   It has been fixed by the Legislature, by R. S., 1857, c. 74, at five years.   It is objected that this Act, having been passed since the probate of the will under consideration, is unconstitutional, as injuriously affecting vested rights.   But whose rights have been disturbed?   Not those of the trustees under the will, for it is immaterial to them whether they hold the estates in controversy for one or another object specified in the will, or for the benefit of the heirs at law.   It deprives the corporation of no rights, for they have had none of which they could be deprived.   They interpose no claim for the bequest.   They ask not for delay.   The contingent objects of the testator's intended bounty are not *in esse,* or are unknown and unknowable.   No rights have been disturbed.   None have been divested, because none have ever vested.

What shall constitute a reasonable time for the performance of the condition precedent, would seem to be a matter the Legislature were especially fitted to establish and determine. The period fixed is certainly not unreasonable. The trustees are not to hold the trust estate forever, when there has long since ceased to be the slightest probability that it will ever be required for the purposes for which it was bequeathed. If five years be a reasonable time for the future, more than double that time has elapsed since the probate of the will.

So, if a legacy be given upon condition subsequent, its performance is required within a reasonable time. In *Attorney General* v. *Bishop of Chester*, 1 Bro. Ch. Cases, 444, a legacy given towards establishing a bishop in America was held good, notwithstanding none was yet appointed; and the Court directed the money to remain in Court until it should be seen whether any appointment should take place. But how long was it to remain under judicial custody? Certainly not forever. When real estate was conveyed on condition that the grantee should remove a mortgage and no time was fixed for so doing, by the parties, it was held that the condition must be performed within a reasonable time. *Ross* v. *Tremaine*, 2 Met., 495.

Whether the condition be precedent or subsequent is immaterial. A reasonable time for its performance has elapsed, and it remains unperformed. The Bangor Asylum and Farm School for indigent boys are not entitled to the devise.

Nor does the doctrine of *cy pres*, or approximation, apply. The testator was one of those to whom corporate powers were granted. The Bangor Asylum and Farm School was the corporation to whose care he was willing to intrust the management of his funds. No other corporation, similar in its character or object has applied. Other charitable purposes are set forth in his will, and are entitled to this fund. *Attorney General* v. *Ironmongers' Co.*, 2 Beavan, 313.

When a trust is ineffectually declared or fails, or becomes incapable of taking effect, the party taking it shall be

deemed a trustee for other trusts in the will, or for those who are to take under the disposition of law.

It is next to be considered whether the twenty thousand dollar fund, consisting of real and personal estate, is to be held in whole or in part by these defendants as trustees in trust for the heirs at law, as such, or in trust for the charities designated in the next item of the will.

" Eighth. — The remainder of my property and estate, real, personal and mixed, I give, bequeath and devise to my said executors and their successors, to be held by them in trust, and after the payment of the aforesaid legacies and bequests, and of my just debts, funeral expenses and costs of probate, to be distributed by them to deserving relations and such indigent persons as they may think worthy of the same, and in such manner as they may think proper."

A portion of the estate set apart for the Bangor Asylum was in personal and a part in real property. The personal property falls into the residuum to be disposed of as indicated in the last cited item of the will. The residuary legatees, when a bequest of personal property becomes ineffectual for any cause, take it by virtue of the residuary clause of the will.

There is a distinction in the English authorities between a lapsed devise of real estate, and a lapsed legacy of personal estate; and while the latter falls into the residuary estate and passes by the residuary clause, if any there be, and, if not, passes to the next of kin, the former does not pass to the residuary devisee, but, the devise becoming void, the estate descends to the legal heir. But this distinction seems to have been abolished by R. S., 1841, c. 92, § 13, by which a devise will pass subsequently acquired real estate. In commenting upon the statute of Massachusetts, which is similar to the one just referred to, Mr. Justice WILDE, in *Prescott* v. *Prescott*, 7 Met., 246, remarks as follows : " The rule is, that lapsed legacies of personal estate pass to the residuary legatee, if any there be, and if not, to the next of kin. This rule, by the common law, does not apply to

lapsed devises of real estate. The distinction is founded on another principle of the common law, by which a devise of real estate is limited in its operation to lands of which the testator was seized when he made his will. The foundation of this distinction is removed by the R. S., c. 62, § 3, which provide that 'any estate, right or interest in lands acquired by the testator after the making of his will, shall pass thereby, in like manner as if possessed at the time of making the will, if such shall clearly and manifestly appear, by the will, to have been the intention of the testator.' This provision seems to remove the distinction between real and personal estate, so that now all legacies and devises pass to the residuary legatee." In *Blaney* v. *Blaney*, 1 Cush., 107, METCALF, J., referring to the same statute, says, that the English rule, above mentioned, "if it ever was in force here, can exist no longer."

The devise of real estate in trust for the Bangor Asylum and Farm School, was upon condition. The condition has never been performed. Whether it ever would be, in the beginning, was matter of doubt. More than reasonable delay for its performance has been allowed. There was, then, a contingent interest remaining. This is disposed of by specific devise. The testator did not intend to die intestate as to any of his property. This contingent interest passed to the respondents, under the residuary clause. *Doe* v. *Scott*, 3 M. & S., 300; *Hayden* v. *Stoughton*, 5 Pick., 528; *Brigham* v. *Shattuck*, 10 Pick., 309. "The rule as to reversionary and contingent interests, not previously devised," remarks WALWORTH, Ch. in *Van Kleek* v. *The Reformed Dutch Church*, 6 Paige, 600, "as now settled in England, appears to be, that a general residuary clause will carry all such interests to the residuary devisee, unless the will contain special indications of a contrary intention on the part of the testator." None such appear, but rather the reverse.

It was determined, in *Going* v. *Emery*, 16 Pick., 107, that the Statute 43 Eliz. c. 4, relating to charitable gifts and

uses, forms in principle and substance a part of the law of Massachusetts. The same course of reasoning adopted in that case shows it a part of the common law of this State. But were it not thus in force, a court of chancery has original jurisdiction to enforce and compel the performance of trusts for pious and charitable uses, when the devise or conveyance in trust is made to a trustee capable of taking the legal estate. *Dutch Church* v. *Mott*, 7 Paige, 77.

Notwithstanding the trust is somewhat vague and indefinite, a court of equity will enforce its execution. Gifts for "charitable, beneficial and public works," at Dacca, in Bengal, for the exclusive benefit of the native inhabitants, *Mitford* v. *Reynolds*, 1 Phillips, 185; for "poor pious persons, male and female," &c., *Nash* v. *Morley*, 5 Beav., 177; for "the widows and orphans of the parish of L.," *Attorney General* v. *Comber*, 1 Sim. & St., 93; for "the benefit and advancement of learning in every part of the world," *Whicher* v. *Hume*, 10 Eng. Law & Eq., 217, have been held valid. Trusts, equally uncertain and indefinite, have been sustained in this country, as in *Shotwell* v. *Mott*, 2 Sandf., Ch., 46, where the bequest was for the members of the New York Yearly Society of Friends, who are in limited and straightened circumstances; in *Going* v. *Emery*, 16 Pick., 107, for the cause of Christ, and for the benefit and promotion of true evangelical piety and religion.

Where the bequest is to relations, the next of kin, according to the statute of distributions, are entitled to the bequest, unless, from the nature of the bequest, or the testator having authorized a power of selection, a different construction is allowed. The Court cannot act arbitrarily by selecting particular objects. Nor can it execute the power in favor of relations in general, for that might lead to indefinite division, as in *Bennett* v. *Honeywood*, Amb., 708, where, within two years, four hundred and fifty persons applied as relations.

In *Harding* v. *Glyn*, 1 Atk., 469, a testator gave to Elizabeth, his wife, a house and certain goods and chattels, but

" desired her at, or before her death, to give the same unto and amongst such of the testator's relations as she should think most deserving and should approve of." The wife died without executing the appointment, and the Court divided the estate equally among the testator's relations living at the time of the wife's death. The rule, as laid down by Lord COTTENHAM, in 5 M. & Cr., 92, is thus expressed, that " where there appears a general intention in favor of individuals of a class to be selected by another person, and the particular intention fails from that selection not being made, the Court will carry into effect the general intention in favor of the class."

Where a fund is bequeathed to executors or trustees upon trust to distribute among the testator's relations, or apply the fund to any other specific purpose, in such manner as they may think fit, the executors or trustees, if willing to execute the trust, will not, on a bill being filed for carrying the trust into execution, be deprived of their discretionary power, but may propose a scheme before the master for the approbation of the Court. *Mahon* v. *Savage*, 1 Sch. & Lef., 111. " When a person has the power given to him of distributing among relatives, he may exercise his discretion," observes Lord REDESDALE, in the case last cited, " by giving to any of the kindred, though not within the statute. But if there has been no distribution by the person having the power, but it is to be left to the decision of the Court what relations shall take, the person entitled must be of kin within the statute, for the Court must have some criterion to go by, and the statute is a good rule for that purpose and the only rule the Court can have."

It may well be presumed to be in accordance with the intentions of the testator, that, in the distribution of his estate, his " deserving relations " should be preferred to " indigent persons" not of kin.

It is not necessary, therefore, to consider whether the alternative bequest to indigent persons is not too vague and indefinite to be upheld. *Vezey* v. *Jameson*, 1 Sim. & St.,

69 ; *Ommany* v. *Butcher*, 1 Turn. & Rus., 260. If so, the residue of the estate would have devolved to the next of kin, had it not been devised in trust for "deserving relations."

The testator intended to dispose of his whole estate by will. He expected all the provisions of his will would be carried into effect. He gave certain definite sums to his sons, — the same to all. He had previously given to John Usher Drew a farm, subject to certain restrictions. These restrictions he removed by will — adding — "said farm is given to him in full for his share in my said estate." But, if all the provisions of his will had been carried into effect, as he supposed they would be, the bequest to each of his children would have been in full of such child's share of his estate. But all these bequests were made upon the hypothesis that his disposition of his estate would be effectual. There is no particular purpose to limit John more than any of his children. They stand alike and may each become the objects of their father's bounty within the discretion vested in the trustees.

The parties are properly before the Court to litigate the question as to the proper disposition and distribution of the estate in controversy. The respondents are in no fault. They were under no obligation to assume responsibility without the direction of the Court. Reasonable costs and charges are therefore to be allowed out of the estate to both parties. *Bliss* v. *American Bible Society*, 3 Allen, 334.

If the estate should be divided among the heirs according to the statute of distribution, if desired by all the heirs and the executor's consent, the trust may be annulled, and the property distributed among the heirs upon their executing a release to the executors. *Smith* v. *Harrington*, 4 Allen, 566.

The bill is sustained, and —

Ordered, that Franklin A. Wilson, Esq., be appointed master to determine the reasonable costs and charges accruing in this case, —

And that the respondent be at liberty to lay before the

master a plan for distributing the estate in their hands, and let the master be at liberty to make a separate report of such plan and thereupon let the parties be at liberty to apply for payment or distribution of the funds remaining in the hands of the executors.

CUTTING, KENT, WALTON and DANFORTH, JJ., concurred.

*J. A. Peters*, for the complainants.

*A. G. Wakefield*, for the respondents.